IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANTUANE BARNES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-10-1338-D |
| | ) | |
| CITY OF OKLAHOMA CITY *ex rel.* | ) | |
| OKLAHOMA CITY POLICE DEPARTMENT, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Before the Court is the Motion to Dismiss of Defendant Steve Flint [Doc. No. 37], which

adopts the Motion to Dismiss of Defendants Bobby Owens and Tom Easley [Doc. No. 24], filed

pursuant to Fed. R. Civ. P. 12(b)(6).[1]  Plaintiffs have responded in opposition to the Motion, which

is fully briefed and at issue.[2]

The Amended Complaint asserts claims under 42 U.S.C. § 1983 and state law against the

City of Oklahoma City and certain police officers based on a series of events in September, 2009.[3]

As pertinent here, Plaintiffs assert common law tort claims against Defendant Flint based on his

---

[1] Plaintiffs responded to the motion of Defendants Owens and Easley by voluntarily dismissing these defendants from the case.  However, Plaintiffs dismissed only their official-capacity action against Defendant Flint.  *See* Order 6/28/11 [Doc. No. 48]; Pls.' Notice of Dismissal [Doc. No. 42].

[2] Defendant Flint filed an untimely reply brief under LCvR7.1(i) that is disregarded.

[3] The remaining individual defendants are Officers Robert Skalla, Brad Ruimveld, and Chad Vontungeln and Detective Steve Flint.  By prior orders, the Court has dismissed the following defendants: Officer Mike Kelly, in his individual and official capacities; Chief of Police Bill Citty, in his individual and official capacities; Officer Skalla, in his official capacity; Officer Ruimveld, in his official capacity; Officer Vontungeln, in his official capacity; Officer John Doe/Bradberry, in his individual and official capacities; Officer Bobby Owens, in his individual and official capacities; and Captain Tom Easley, in his individual and official capacities.  *See* Order 6/28/11 [Doc. No. 48]; Order 7/18/11 [Doc. No. 54].  The Court has also granted summary judgment to the City of Norman.  *See* Order 8/3/11 [Doc. No. 59].

alleged negligence in investigating a false stolen vehicle report involving Plaintiff Antuane Barnes, and his alleged intentional infliction of emotional distress on both Plaintiffs when he allegedly caused Oklahoma City police officers to illegally detain Mr. Barnes and coerce his consent to a seizure of his property.   Defendant Flint asserts that Plaintiffs' negligence claim against him personally is barred by the Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-172, and that the Amended Complaint fails to state a claim of intentional infliction of emotional distress.

### Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  The court of appeals has recognized that "the degree of specificity necessary to establish plausibility and fair notice [under Rule 8(a)(2)], and therefore the need to include sufficient factual allegations, depends on context." *See Robbins v. Oklahoma*, 519 F. 3d 1242, 1248 (10th Cir. 2008).  "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities.  Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1249-50 (emphasis in original); *see also Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).  The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary

to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

### Plaintiffs' Amended Complaint[4]

Plaintiffs Antuane and Jane Barnes are residents of Oklahoma City, Oklahoma. In July, 2009, Mr. Barnes purchased a used 2006 Dodge Ram truck from Norman Chrysler-Jeep, Inc. dba Norman Chrysler Jeep Dodge (NCJD) in exchange for his 1997 Ford F150 truck and a $2,000 down payment. Mr. Barnes and NCJD allegedly entered into a retail installment sales contract under which NCJD became the secured creditor and Mr. Barnes became the debtor in a sales transaction that was complete when Mr. Barnes took delivery of the Dodge truck. After unsuccessfully attempting to find a lender to take assignment of the contract, NCJD allegedly breached the contract by demanding that Mr. Barnes return the Dodge truck. Mr. Barnes reluctantly "agreed to return the vehicle based upon NCJD assurances that he would be returned to [his] original position, specifically, the return of his traded Ford and the refund of his $2,000 down payment." *See* Am. Compl. ¶ 16. On September 4, 2009, Mr. Barnes returned to NCJD with the vehicle and "was falsely told that NCJD needed to 'inspect' his Dodge prior to returning his Ford" but, after the keys were in NCJD's possession, he "was informed that his Ford trade-in had been sold and that he'd be forced to accept an $800 check in lieu of its return." *Id.* ¶¶ 17-18. Mr. Barnes allegedly refused, and "[i]n response to NCJD's trickery, Barnes left NCJD using his second set of keys to the Dodge Ram, returning to his Oklahoma City home." *Id.* ¶ 20.

NCJD allegedly hired "a retired police/private investigations firm" to repossess the Dodge truck, and on September 5, 2009, "NCJD made a knowingly false police report to the Norman Police

---

[4] Pursuant to the standard of decision, the factual allegations of the Amended Complaint are accepted as true and stated in the light most favorable to Plaintiffs.

Department (NPD) that Barnes had 'stolen' the Dodge Ram." *Id*. ¶¶ 21-22. The assigned NPD police officer, Bobby Owens, allegedly interviewed an NCJD employee and was told Mr. Barnes "came into the dealership to return the Dodge Ram and get his down payment and trade-in money and then 'ran.'" *Id*. ¶ 24. According to Plaintiffs, "Officer Owens made note of the fact that Barnes had accepted a trade vehicle, that NCJD had apparently sold his trade in and kept his $2,000 for almost two months," but Officer Owens "took the 'stolen vehicle' report anyway" and authorized its entry into the National Crime Information [sic]." *Id*. ¶¶ 25-26. On September 10, 2009, the case was allegedly assigned to Defendant Flint, an NPD detective, for investigation. He did not contact Mr. Barnes but, instead, "allegedly contacted Assistant District Attorney Jennifer Austin, reviewed the facts of the case with her and was advised there was sufficient evidence to file a criminal complaint against Barnes for the unauthorized Use of a Motor Vehicle." *Id*. ¶ 28. Plaintiffs allege that Ms. Austin later denied she was ever contacted about the case.

On September 16, 2009, a retired police/private investigator hired by NCJD, Mannie Brewer, allegedly trespassed into Plaintiffs' gated community and onto their property "to confirm that Barnes was in possession of the Dodge, which was housed inside his closed garage." *Id*. ¶ 31. Mr. Brewer then reported to the Oklahoma City Police Department (OCPD) "that he had 'located' a stolen vehicle." *Id*. ¶ 32. Three OCPD officers responded. After talking with Mr. Brewer and confirming that the subject vehicle was in Plaintiffs' garage, Officer Robert Skalla "entered the Barnes' home and told [Mr.] Barnes he must come out to his police vehicle because he was a suspect and was in possession of a stolen vehicle." *Id.* ¶ 38. Mr. Barnes was then handcuffed, escorted to a police car, searched, and placed in the back seat. Officer Skalla questioned Mr. Barnes, and after being informed that NCJD had sold Mr. Barnes' trade-in vehicle, "Officer Skalla decided it was more a civil matter." *Id*. ¶ 42.

"Officer Skalla then phoned Detective Flint and informed him of the facts of the situation." *Id*. ¶ 43. According to the Amended Complaint, "Detective Flint admitted this seemed like a civil dispute" during the conversation, but he nevertheless "instructed" Officer Skalla "to get Barnes to sign a search waiver." *Id*. ¶¶ 44-45. Detective Flint allegedly had a phone conversation "with on-site officers [and] urged the officers to secure a Waiver of Search Warrant from Barnes in order to illegally remove his property from his garage without need of court intervention." *Id*. ¶ 49. "Following threats of arrest of his wife and Department of Human Services' custody for his toddler, Barnes agreed to sign a Release and Waiver of Search Warrant and was released from his cuffs to do so." *Id*. ¶ 50. OCPD then allegedly permitted Mr. Brewer to take the Dodge truck. Without ever speaking with Mr. Barnes, NPD subsequently "determined no crime was committed by Barnes and declined to initiate any filing with the Norman District Attorney." *Id*. ¶ 53.

Based on these factual allegations, Plaintiffs bring § 1983 claims against the City of Oklahoma City and the OCPD officers involved in Mr. Barnes' arrest and the seizure of the truck, as well as supplemental state law claims of conversion and trespass against these defendants. Against Defendant Flint, Plaintiffs assert only state common law claims of negligence and intentional infliction of emotional distress. Specifically, Defendant Flint "had a duty to conduct a reasonable investigation into the alleged "stolen" vehicle report which he failed to do." *See id*. ¶ 76. The claim of intentional infliction of emotional distress is asserted against all defendants based on each defendant's part in the events. Defendants allegedly caused "outrageous emotional distress . . . to all Plaintiffs when they committed the violations in this matter," resulting in Plaintiffs' "loss of sleep, loss of emotional well-being and worry." *See id*. ¶¶ 82, 84.

**Discussion**

**A.      Negligence**

Defendant Flint first asserts that Plaintiffs cannot bring a negligence claim against him based on his work as a police officer because the Governmental Tort Claims Act (GTCA) provides for exclusive liability of a political subdivision for torts of its employees acting within the scope of their employment.  *See* Okla. Stat. tit. 51, § 153; *see also Shephard v. CompSource Oklahoma*, 209 P.3d 288, 294 (Okla. 2009).  GTCA specifically states:  "In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . ."  *See* Okla. Stat. tit. 51, § 163(C).  As defined by GTCA,"'[s]cope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment . . . ." *Id*. § 152(12) (emphasis added).  "[A]cts undertaken with malice or in bad faith are not within the scope of employment.  Also, acts contrary to the interests of the employer are not within the scope of employment."  *Shephard*, 209 P.3d at 294.

Defendant Flint argues that he was necessarily acting within the scope of his employment as a police detective if he performed a negligent police investigation, as alleged by Plaintiffs.  Although Plaintiffs oppose this aspect of the Motion, they provide no argument or authority for their position, aside from a conclusory statement in their brief that Defendant Flint "acted outside the scope of his employment."  *See* Pls.' Resp. Br. [Doc. No. 52] at 9.  Upon examination of the Amended Complaint, the Court finds no factual allegations to support a finding that Defendant Flint was acting with malice, in bad faith, or contrary to NPD's interests while conducting his investigation of the allegedly false stolen vehicle report.  Therefore, the Court finds that the negligence claim asserted by Plaintiffs against Defendant Flint must be dismissed.

**B.      Intentional Infliction of Emotional Distress**

To prevail on a claim of intentional infliction of emotional distress under Oklahoma law, a

plaintiff must show: "(1) the defendant acted intentionally or recklessly, (2) the defendant's conduct

was extreme and outrageous, (3) the defendant's conduct caused the plaintiff emotional distress, and

(4) the resulting emotional distress was severe." *See Computer Publications, Inc. v. Welton*, 49 P.3d

732, 735 (Okla. 2002).  To satisfy the second element, the defendant's conduct must be so extreme

and outrageous as to be "beyond all possible bounds of decency" in the setting in which it occurred,

or "utterly intolerable in a civilized community." *See Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986);

*see also Welton*, 49 P.3d at 735; *Kraszewski v. Baptist Medical Center of Okla., Inc*., 916 P.2d 241,

248 (Okla. 1996).  "In general, a plaintiff must prove that the recitation of defendant's conduct to

an average member of the community would arouse the listener's resentment against the defendant

and would lead the listener to exclaim 'Outrageous!'" *Welton*, 49 P.3d at 735.

In this case, Defendant Flint contends that Plaintiffs have failed to allege sufficient facts to

suggest extreme and outrageous conduct.  Plaintiffs have responded in their brief with a recitation

of facts (many of which do not appear in the Amended Complaint) and a submission of written

materials, including deposition transcripts and Plaintiffs' affidavits.  In order to consider Plaintiffs'

evidentiary materials, "the motion must be treated as one for summary judgment under Rule 56,"

and a reasonable opportunity to present all pertinent material must be given.  *See* Fed. R. Civ.

P. 12(d).  Under the circumstances, the Court declines to convert Defendant's Motion to a summary

judgment motion, and thus, Plaintiffs' materials will not be considered.  However, the Court, in its

discretion, may consider additional factual allegations offered in Plaintiffs' response brief "if they

[are] consistent with the facts and theories advanced in the complaint," regardless whether Plaintiffs

7

have requested leave to amend or offered an amended pleading. *See Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).

Upon consideration of the Amended Complaint, as well as additional allegations presented in Plaintiffs' brief, the Court finds insufficient facts to support a finding of outrageous conduct by Defendant Flint. Accepting the factual allegations as true, Plaintiffs' pleading and argument relate the following conduct by Defendant Flint. First, he failed to conduct a reasonable investigation of the stolen vehicle report by failing to contact Mr. Barnes or do "much of anything to investigate the claims or location of the alleged stolen vehicle, even though all the contact information was provided in the report." *See* Pls.' Resp. Br. [Doc. No. 52] at 3. Second, on September 16, 2009, Defendant Flint was informed by Officer Skalla that Mr. Barnes was in OCPD custody and being detained pursuant to the stolen vehicle report. *Id.* Defendant Flint was also informed that a trade-in vehicle belonging to Mr. Barnes was involved, that NCJD had refused to return the vehicle, and that Officer Skalla "believed that the 'stolen' Dodge Ram was the focus of a civil matter and not a criminal matter." *Id.* at 3-4. "Defendant Flint, concurring that the incident was a civil matter, instructed Officer Skalla to continue detaining Barnes until he agreed to sign a Waiver of Search Warrant, thereby ostensibly providing acquiescence to [OCPD's] illegal search and intended seizure of Barnes' property." *Id.* at 4. Defendant Flint "was aware that Barnes was still handcuffed in the rear of an [OCPD] squad car while his family, friends and neighbors watched and wondered if he would be taken to jail." *Id.* Defendant Flint also allegedly "knew that Barnes' continued detention would cause severe emotional distress to both he and his family" or "knew there was a substantial probability that outrageous [sic] emotional distress would result to all Plaintiffs." *Id.*

The premise of Plaintiffs' argument that their description of Defendant Flint's conduct should cause an exclamation of "outrageous!" appears to be his "instruction" of OCPD officers to

continue detaining Mr. Barnes and to obtain his waiver or consent to a seizure of the truck, despite the officers' conclusion that the stolen vehicle report was a civil matter.  According to Plaintiffs, upon learning Mr. Barnes' version of events, "Defendant Flint should have requested Oklahoma City Police officers release Barnes and make every effort to remove the [stolen vehicle] report from [the national crime database] immediately."  *See* Pls.' Resp. Br. [Doc. No. 52] at 7.  Plaintiffs provide no authority for their position. "The essential elements of the crime of Unauthorized Use of a Motor Vehicle are: 1) take, use or drive; 2) a motor vehicle; 3) without consent of the owner; 4) with the intent to deprive the owner of possession." *E.L.W. v. State*, 736 P.2d 523, 524 (Okla. Crim. App. 1987); *see* 47 O.S.1981, § 4–102.  While a claim of ownership might provide a defense to the charge, Plaintiffs do not explain why Defendant Flint should have withdrawn the report immediately upon learning that a dispute existed.  Moreover, from the allegations of the Amended Complaint regarding Mr. Barnes' detention by OCPD, it is clear Defendant Flint worked for NPD, and there is no factual allegation to suggest he had any authority to direct OCPD officers how to proceed with respect to Mr. Barnes.

Plaintiffs also appear to rely on the alleged coercion of Mr. Barnes to consent to the seizure and the tactics allegedly used, including a threat to involve Mrs. Barnes and their young child. There is no allegation, however, that Defendant Flint suggested to OCPD officers that they use such tactics.  More importantly, as stated above, Plaintiffs present no factual basis to conclude that Defendant Flint had authority over OCPD officers or any ability to control how they handled the situation at Plaintiffs' residence.

In short, upon consideration of the alleged facts, the Court finds them insufficient, even if accepted and viewed most favorably to Plaintiffs, to permit a finding of extreme and outrageous conduct by Defendant Flint.  While Defendant Flint might have been negligent or might have used

poor judgment when OCPD officers called to consult him about the situation at Plaintiffs' residence, the Court cannot say that Plaintiffs describe conduct by Defendant Flint that could reasonably be regarded as beyond the bounds of decency and intolerable in a civilized society. Therefore, the Court finds that Plaintiffs have failed to state a plausible claim of intentional infliction of emotional distress against Defendant Flint.

## Conclusion

For these reasons, the Court finds that the Amended Complaint fails to state a claim against Defendant Flint and that Plaintiffs action against him personally should be dismissed.

IT IS THEREFORE ORDERED that the Motion to Dismiss of Defendant Steve Flint [Doc. No. 37] is GRANTED. Plaintiffs' action against Defendant Flint in his individual capacity is dismissed without prejudice.

IT IS SO ORDERED this 3rd day of November, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE